UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL MEDWIT,

      Plaintiff,

v.                                                                Case No. 2:20-cv-143-JLB-NPM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

### REPORT AND RECOMMENDATION

Michael Medwit seeks judicial review of a denial of his application for supplemental security income. The Commissioner of the Social Security Administration filed the transcript[1] of the proceedings, and the parties filed a Joint Memorandum (Doc. 22). As discussed in this report, the decision of the Commissioner should be affirmed.

**I.      Eligibility for Disability Benefits and the ALJ's Decision**

    **A.      Eligibility**

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of any medically

---

[1] Cited as "Tr." followed by the appropriate page number.

determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.[2] The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.[3]

### B.    Factual and procedural history

Medwit was born in July of 1959. (Tr. 124). He obtained an associate's degree, managed and maintained a family-owned apartment building, and worked as a real estate agent. (Tr. 81, 94, 269, 319). On June 12, 2017, Medwit applied for supplemental security income. (Tr. 62, 125, 228). He asserted a corresponding onset date, alleging disability due to the following: unable to take off shirt without screaming due to pain; sharp pain from neck to head; chronic pain; rotator cuff issues; high blood pressure; mental issues; depression; anxiety; lower back issues; memory issues. (Tr. 62, 125).

Medwit's claims for benefits were administratively denied initially on July 14, 2017, and upon reconsideration on August 25, 2017. (Tr. 62, 123, 131, 134, 143). At Medwit's request, the Administrative Law Judge ("ALJ") held a hearing on August 7, 2018. (Tr. 75-122, 161-162). The ALJ issued an unfavorable decision on

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

December 3, 2018, finding Medwit not disabled since June 12, 2017, the date the application was filed. (Tr. 59-69).

On September 17, 2019, the agency's Appeals Council denied Medwit's request for review. (Tr. 1-6). Medwit then filed a Complaint (Doc. 1) with this Court on March 3, 2020, and the case is ripe for review.

### C.    The ALJ's decision

An ALJ must perform a "five-step sequential evaluation" to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400. Unlike judicial proceedings, SSA hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111

(2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See Washington*, 906 F.3d at 1359; *see also* 20 C.F.R. § 416.912, (providing that the claimant must prove disability); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001) ("[T]he overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant.").

At step one of the evaluation, the ALJ found Medwit had not engaged in substantial gainful activity since June 12, 2017, the application date. (Tr. 64). At step two, the ALJ characterized Medwit's severe impairment as "status post cellulitis." (Tr. 64). At step three, the ALJ determined Medwit did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Tr. 66).

As the predicate to step four, the ALJ arrived at the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). The claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk 6 hours out of an 8-hour workday; frequently climb ladders, ropes, and scaffolds; and has an unlimited ability to climb ramps and stairs. He can frequently stoop, kneel, crouch, and crawl. There are no mental health limitations.

(Tr. 66). At step four, the ALJ listed Medwit's past-relevant work as follows:

1)  Property Manager (DOT #186.167-046); SVP 8; light;

2)  Real Estate Agent (DOT #250.357-018); SVP 5; light;

3)  Maintenance Worker (DOT #382.664-010); SVP 3; medium.

(Tr. 68).[4] The ALJ found Medwit "capable of performing past relevant work as a

---

[4] The DOT numbers refer to the Dictionary of Occupational Titles and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work, in a purely physical sense, that the job requires, and it is divided into five categories: sedentary, light, medium, heavy and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled and skilled, with the "SVP" (Specific Vocational Preparation) providing further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled, SVP 3 and 4 are semiskilled, and SVP 5 through 9 are skilled.

Property Manager and Real Estate Agent," because those jobs do not require the performance of work-related activities precluded by Medwit's RFC. (Tr. 68). The inquiry ended at step four, and the ALJ concluded that Medwit had not been under a disability within the meaning of the Social Security Act. (Tr. 69).

## II.    Analysis

Medwit's appeal presents the following issues:

(1)    Whether the ALJ erred by finding Medwit's mental impairments not severe and not including mental limitations in the RFC and in hypothetical questions to the vocational expert;

(2)    Whether the ALJ should have obtained or provided a mental residual functional capacity assessment;

(3)    Whether the ALJ failed to adequately develop the record concerning Medwit's shoulder complaints;

(4)    Whether the ALJ erred by not finding a severe shoulder impairment or including relevant limitations in the RFC and in hypothetical questions to the vocational expert; and

(5)    Whether the ALJ's finding that Medwit could perform his past relevant work was supported by substantial evidence.

(Doc. 22, pp. 12, 20, 24, 32, 39).

### A.    Standard of review

While the Court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the Court's review of the agency's decision is limited to determining whether "it is supported by substantial evidence and based on proper

legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. If supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

### B. Whether the ALJ erred by finding Medwit's mental impairments not severe and not including mental limitations in the RFC and in hypothetical questions to the vocational expert

At step two, an ALJ considers the severity of a claimant's impairments. 20 C.F.R. § 416.920(a)(4)(ii). An impairment or combination of impairments is not severe "if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities" 20 C.F.R. § 416.922(a). In other words, a severe

impairment is an impairment or combination thereof that *significantly* limits a claimant's abilities to perform basic work activities. *See* SSR 85-28, 1985 WL 56856, *4 n.1; 20 C.F.R. §§ 416.920(c), 416.922(a).

The severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). The impairment must also last or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The claimant bears the burden at step two of proving that he has a severe impairment or combination of impairments. *O'Bier v. Comm'r of Soc. Sec. Admin.*, 338 F. App'x 796, 798 (11th Cir. 2009).

This inquiry "acts as a filter in that the finding of any severe impairment ... is enough to satisfy the requirement of step two and allow the ALJ to proceed to step three." *Ball v. Comm'r of Soc. Sec. Admin.*, 714 F. App'x 991, 993 (11th Cir. 2018) (internal quotations omitted). "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). "[B]eyond the second

step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling." *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-42 (11th Cir. 2014) (internal citations omitted). As a result, even if the ALJ should have found Medwit's mental impairments severe at step two, any error is harmless because the ALJ determined that Medwit's status post cellulitis was severe, which allowed the ALJ to move on to step three. *See Ball v. Comm'r of Soc. Sec. Admin.*, 714 F. App'x 991, 993 (11th Cir. 2018).[5]

Medwit's argument that the purported error affected the ALJ's RFC determination and the resulting hypothetical to the vocational expert also fail because the ALJ considered all of Medwit's symptoms and impairments, including his mental impairments in combination when determining his RFC. *Ball v. Comm'r of Soc. Sec. Admin.*, 714 F. App'x 991, 993 (11th Cir. 2018). The ALJ specifically stated that he considered the entire record and "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 66).

In considering the four broad areas of mental health, the ALJ referenced, among other records, a function report dated June 27, 2017 from Medwit (Tr. 277-284), treatment records from Family Health Centers (Tr. 368-392), and treatment

---

[5] Notably at step two, the ALJ carefully considered Medwit's mental impairments when he analyzed the four broad areas of mental functioning and found Medwit to have only mild limitations in all of them. (Tr. 65-66).

records from SalusCare Inc. (Tr. 398-416, 456-464). These records showed, for example, that Medwit had coherent thoughts. (Tr. 65-66, 398, 402, 414, 447). The ALJ also considered Medwit's testimony concerning his mental limitations. (Tr. 65, 67). Medwit testified that he was taking psychotropic medication once or twice a week, but the medical records from SalusCare revealed that none were prescribed to him and he declined to take any. (Tr. 67, 96-97, 104-108, 110-114, 415). And the ALJ considered and found persuasive the opinions of Richard Willens, Psy. D., and James Levasseur, Ph.D., the state agency psychologists, when determining the RFC. (Tr. 68). Both agency psychologists opined Medwit had non-severe mental impairments. (Tr. 68, 130, 141). The ALJ considered all of Medwit's symptoms and impairments in determining Medwit's RFC and made specific and well-articulated findings. *See Ball*, 714 F. App'x at 993 (citing *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987) ("the ALJ must 'make specific and well-articulated findings as to the effect of the combination of impairments' in determining residual functional capacity.")).

Because there was no error in this respect concerning the formulation of the RFC, and the RFC was incorporated into the hypotheticals posed to the vocational expert, there was no error concerning the opinions elicited from the vocational expert. For the vocational expert's opinion to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's

impairments." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). But an ALJ is not required to include findings in the hypothetical that the ALJ found to be unsupported by the record. *Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)).

### C.    Whether the ALJ should have obtained or provided a mental residual functional capacity assessment

Medwit next contends that the ALJ assessed him as having "fair" insight and judgment, which is equivalent to at least "moderate" limitations. (Doc. 22, p. 21). The premise of this argument is incorrect, and the Commissioner's response regarding this contention is well taken. (Doc. 22, pp. 22-24).

First, the "paragraph B" criteria for determining the severity of mental impairments at step two consists of four areas of mental functioning. (Tr. 65). The four functional areas include: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 416.920a(c)(4); (Tr. 65-66). Notably, "insight and judgment" is not among the administration's defined domains of mental functioning.

Next, the ALJ did not find that Medwit had a "fair" limitation in any of the four areas of mental functioning. In determining Medwit had only "mild" limitations in the domain of "adapting or managing oneself," the ALJ referenced *Dr. Smith's*

findings of fair insight and judgment. (Tr. 66 (citing Tr. 398, 414, 453); *see also* Tr. 447, 450, 456, 459, 462). This was just one piece of evidence the ALJ referenced in concluding that the overall medical evidence supported a finding of only mild limitations in that area. (Tr. 66).

There is also no indication that "fair" as used in the treatment notes has the same meaning as in the social security context. Dr. Smith had three options on the form for assessing judgment and insight (good, fair, or poor), none of which are defined. (*E.g.*, Tr. 450). Dr. Smith's treatment notes did not come on a standard social security form, like the form SSA-1152 at issue in *Stevenson v. Apfel*, 103 F. Supp. 2d 1315, 1320 (N.D. Ga. 1999), a Georgia case on which Medwit relies. (Doc. 22, pp. 21-23). Since the ALJ only assessed "mild" limitations in the four areas of mental functioning, the ALJ did not err by not providing a mental RFC. *See, e.g.*, 20 C.F.R. § 416.920a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.").

### D. Whether the ALJ failed to adequately develop the record concerning Medwit's shoulder complaints

A claimant bears the burden of proving he is disabled and is responsible "for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a)). However, an ALJ "has a basic

duty to develop a full and fair record." *Id.* (citing 20 C.F.R. 416.912(d)); *see* 20 C.F.R. § 416.945(a)(3) ("However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources."). This duty applies whether or not the claimant is represented by counsel. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). Generally, the duty to develop the record is required due to the inquisitorial nature of the administrative proceedings. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018). A court will remand for further factual development of the record when the record contains evidentiary gaps that result in unfairness or clear prejudice. *Id.* (quoting *Henry*, 802 F.3d at 1267).

Medwit claims the ALJ failed in his duty to develop the record because he refused Medwit's request for a consultative examination, including a bilateral shoulder x-ray. (Doc. 22, pp. 24-30). The regulations provide that if a claimant's "medical sources cannot give ... sufficient medical evidence about [an] impairment ... to determine whether [he is] disabled," the government may pay for a consultative medical examination or other medical testing. 20 C.F.R. § 416.917; *see* 20 C.F.R. § 416.919a. But, because the Social Security Act only requires substantial evidence to sustain an ALJ's findings, an ALJ need not obtain a consultative examination to

determine "with absolute certainty" whether a claimant has a particular impairment. *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988). In other words, an ALJ is not required to order a consultative examination "as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007).

In a letter dated June 27, 2018, Medwit's counsel requested the ALJ order a consultative examination, specifically to include bilateral shoulder x-rays. (Tr. 334). On July 3, 2018, the ALJ provided a pre-hearing explanation of his denial of the request. (Tr. 335). The ALJ explained as follows:

> Although the claimant says he has "shoulder problems that have not been evaluated by an acceptable medical source," a thorough review of medical exhibits 1F to 13F indicates that statement is not completely accurate. On May 15, 2017, the claimant was examined in the Emergency Department of Lee Memorial Hospital. At that time, his musculoskeletal system was negative for arthralgia's, joint swelling, myalgias, neck pain, and neck stiffness. His neurological system was also symptom free. (1F/4)
>
> He was examined again on May 17, 2017 at Family Health Centers. His musculoskeletal system was normal and he had normal movement in all extremities. Specifically, his shoulders, cervical spine, thoracic spine and lumbar spine all showed no abnormalities. (4F/11) On May 24, 2017 he was examined by Margarita Dorsey, ARNP. She determined that he had no musculoskeletal symptoms. (4F/3) In fact, the claimant never reported any shoulder impairments or limitations during any of the other times he was treated in 2017 or 2018. Consequently, I find no reason to send the claimant for bilateral shoulder x-rays prior to his hearing. If hearing testimony warrants further evaluation, I will send the claimant for post-hearing evaluations as necessary.

(Tr. 335). During the hearing before the ALJ, Medwit testified about his alleged shoulder pain, but the ALJ did not change his decision to decline to order a

14

consultative examination. (Tr. 80-81, 97-100, 102-104, 106, 119-121).

In his December 3, 2018 decision, the ALJ determined that Medwit's complaints of shoulder pain did not rise to the level of a "severe" impairment at step two. (Tr. 64-65). The ALJ noted that physical examinations revealed no abnormalities and Medwit consistently had normal range of motion and normal strength in all muscle groups. (Tr. 64 (citing Tr. 378-392, 418-420, 421-427)). He found that Medwit's alleged shoulder impairment was not medically determinable as there were no medical signs or laboratory findings established by medically acceptable clinical or laboratory diagnostic techniques to show the existence of the impairment. (Tr. 64-65). The ALJ acknowledged Medwit's testimony concerning alleged shoulder pain; he found that Medwit's testimony concerning the intensity, persistence and limiting effects of his symptoms were not consistent with the medical evidence and other evidence in the record. (Tr. 67). The ALJ also noted:

> The claimant indicated he stopped working because his family's property was foreclosed on. Prior to this, he was capable of [] "everything" (Exhibits 4E and 5E). It is notable that the claimant did not stop working due to limitations caused by medical impairments; rather, it was due to the loss of the family business.

(Tr. 67 (citing Tr. 276-284)).

Medwit testified that even before 2014, he had problems with his shoulders "once in a while" that has "compounded worse over the years," but he did not get specific treatment for his shoulders and he "live[s] with it." (Tr. 98, 103). Medwit testified that he received a referral to Radiology Regional concerning his shoulder,

but he did not go because of depression. (Tr. 103). He further admitted that he did not have specific treatment for his shoulder at least within the prior two to three years before the hearing. (Tr. 98).

Medwit cites to some records concerning his shoulders from about six weeks *after* the ALJ issued his decision, which have no bearing on whether the ALJ erred by refusing to order a consultative examination based on the information provided *at that time*. (Doc. 22, p. 28 (citing Tr. 12, 21)). Medwit submitted the new evidence to the Appeals Council, but the Appeals Council found it did not relate to the period at issue and denied Medwit's request for review. [6] (Tr. 2). Rather, Medwit's treatment notes provided normal findings for his musculoskeletal and neurological systems. (Tr. 345, 347, 370, 376, 378-379, 424).

The ALJ reviewed years of medical evidence with little or no treatment notes indicating any shoulder impairment. Medwit's allegations on his disability applications is not objective medical evidence. *See* 20 C.F.R. § 416.929(a) ("[S]tatements about your pain or other symptoms will not alone establish that you

---

[6] Medwit does not challenge the Appeals Council's determination that the new evidence did not relate to the applicable period, and Medwit has waived any challenge. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue....").

are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) ….”). Nevertheless, the ALJ considered the shoulder impairment (Tr. 64-65) and reserved judgment on ordering a consultative examination until after he had the opportunity to “see[] the hearing up close.” (Tr. 335); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019). The record contained sufficient evidence for the ALJ to make an informed decision, and he did not violate any duties to develop the record.

### E.    Whether the ALJ erred by not finding a severe shoulder impairment or including relevant limitations in the RFC and in hypothetical questions to the vocational expert

To reiterate,[7] step two was already satisfied since the ALJ found at least one severe impairment and moved on through the sequential process. *See Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013); *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 841-42 (11th Cir. 2014) (“[B]eyond the second step, the ALJ must consider the entirety of the claimant's limitations, regardless of whether they are individually disabling.”). Further, as discussed in the preceding section, the ALJ reviewed years of medical evidence with little or no treatment notes reflecting shoulder issues, despite Medwit's allegations of a chronic shoulder impairment. (*See* discussion *supra* Section II.D).

Medwit's argument that the purported error affected the ALJ's RFC

---

[7] *See* discussion *supra* Section II.B.

determination and the resulting hypothetical to the vocational expert fail because the ALJ considered all of Medwit's symptoms and impairments, including his shoulder impairments in combination when determining his RFC. *Ball v. Comm'r of Soc. Sec. Admin.*, 714 F. App'x 991, 993 (11th Cir. 2018). The ALJ specifically stated that he considered the entire record and "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 66). And, as discussed in depth in the preceding section, the ALJ reviewed Medwit's allegations of a shoulder impairment, but found it was not medically determinable, given the lack of evidence in the medical records of this impairment. (Tr. 64-65, 67; *see* discussion *supra* Section II.D). Notwithstanding this, the ALJ reduced Medwit's physical RFC to light work, explaining as follows:

> Although the medical evidence of record does not support the claimant is as functionally limited as he alleged, the residual functional capacity has been reduced to account for his impairments, complaints of pain and supported limitations. Accordingly, I find that the claimant retains the functional capacity to lift and/or carry 20 pounds occasionally, and 10 pounds frequently. He can stand and/or walk 6 hours out of an 8-hour workday. The claimant can frequently climb ladders, ropes, and scaffolds. He has an unlimited ability to climb ramps and stairs. The claimant can frequently stoop, kneel, crouch, and crawl.

(Tr. 68).

Lastly, just as there was no error in the hypotheticals posed to the vocational expert concerning any mental impairments, there was likewise no error in the hypotheticals concerning Medwit's shoulder complaints because substantial

evidence supported excluding any such limitations from the RFC, and the RFC was incorporated into the questions posed to the vocational expert. *See Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)) (noting an ALJ is not required to include findings in the hypothetical that the ALJ found to be unsupported by the record).

> ### F. Whether the ALJ's finding that Medwit could perform his past relevant work was supported by substantial evidence

At step four, the ALJ found that Medwit had the RFC to perform past relevant work as a Property Manager and Real Estate Agent. (Tr. 68). Medwit's final assignment of error is that the ALJ failed to evaluate whether or not his work for his family's apartment building was a composite job of Property Manager and Maintenance Worker. (Doc. 22, p. 40). The ALJ listed Maintenance Worker as past relevant work, which has a medium exertional level. (Tr. 68). However, the ALJ limited Medwit's RFC to light work. (Tr. 66). While Property Manager is classified as having a light exertional level, the Maintenance Worker job is classified as having a medium exertional level. (Tr. 68). Since Medwit's past relevant work as a Property Manager and Maintenance Worker was in combination, the ALJ erred by finding Medwit could still perform it despite his RFC. The Commissioner concedes this point but contends that it was harmless error because (1) the ALJ found Medwit could perform his past relevant work as a real estate agent and (2) the vocational

expert identified a significant number of other jobs in the economy that a hypothetical individual with Medwit's vocational factors and an even more restrictive RFC could perform. (Doc. 22, p. 43).

At the fourth step of the sequential evaluation, the burden lies with the claimant to show that he cannot return to his past relevant work as he actually performed it or as it is performed in the general economy. *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990); *Levie v. Comm'r of Soc. Sec.*, 514 F. App'x 829, 830 (11th Cir. 2013); *Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 953 (11th Cir. 2010). Even though the burden lies with Medwit, the ALJ must consider all of the duties of Medwit's past relevant work and evaluate Medwit's ability to perform that work in spite of his impairments. *Levie*, 514 F. App'x at 830.

The regulations define "past relevant work" as "work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [claimant] to learn to do it." 20 C.F.R. §§ 416.960(b)(1), 416.965(a). "Substantial gainful activity" is, naturally, both "substantial" and "gainful," which are further defined in the regulations. 20 C.F.R. § 416.972. "Substantial" means "doing significant physical or mental activities." *Id.* § 416.972(a). As the regulations advise claimants: "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." *Id.* "Gainful" activity is work that is done for pay or profit, whether

or not a profit is realized. *Id.* § 416.972(b). A chief consideration in determining whether past work is substantial gainful activity is to consider average monthly earnings and whether those earning are above or below a certain amount established by the administration's earnings guidelines. 20 C.F.R. § 416.974(a); *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 524 (11th Cir. 2014).

Medwit had a real estate license from at least 1988 to 2005. (Tr. 81, 94, 269, 319). Medwit testified he made a sale in 2005 during the fifteen-year period prior to his disability application. (Tr. 94, 269, 319). His commission for that sale was $12,230. (Tr. 94, 237, 239, 242). Medwit also worked from about 2005 to February 2014 for his family's apartment building, performing managerial and maintenance tasks. (Tr. 82, 270). This job ended when the mortgaging bank foreclosed on the property. (Doc. 22, p. 2).

Medwit's prior work as a real estate agent constitutes past relevant work. Medwit testified to earning a significant commission of $12,230 in 2005. (Tr. 94, 237, 239, 242, 319). In 2005, an average monthly income of $830 or more ordinarily showed a claimant engaged in substantial gainful activity. POMS ("Program Operations Manual System") DI 10501.015(B), 2001 WL 1931773; 20 C.F.R. § 416.974a (earnings are averaged over applicable time period). The ALJ noted that this job was performed long enough to learn and was performed within the relevant time frame. (Tr. 68).

"Earnings are generally averaged over the actual period of time in which work was performed." SSR 83-35, 1983 WL 31257, *1 (Jan. 1, 1983); *accord Schlegel v. Comm'r of Soc. Sec.*, No. 6:16-cv-1236-Orl-DCI, 2017 WL 2379811, *2 (M.D. Fla. June 1, 2017) ("A claimant's average monthly earnings while doing prior work is calculated by averaging the claimant's earnings over the actual period of work involved, not over the entire year."). When earnings are provided as a year's income and there is no breakdown of the months actually worked, monthly earnings will be averaged over the course of the year. *Bryant v. Comm'r of Soc. Sec.*, No. 8:18-CV-2087-T-PDB, 2019 WL 4744942, *4 (M.D. Fla. Sept. 30, 2019) (averaging claimant's 2002 earnings over 12 months because the actual months she worked that year were unknown). Medwit's commission in 2005 averaged over the course of the year would equate to about $1,019 per month, which qualifies as substantial gainful activity. *Id.*; POMS DI 10501.015(B), 2001 WL 1931773; 20 C.F.R. § 416.974a.

The ALJ reasonably concluded that Medwit's past relevant work included the job of real estate agent. This conclusion is bolstered by the fact that the claimant bears the initial burden of proving that his past work experience is not "past relevant work" under the SSA regulations and that he is unable to perform it. *Walker v. Saul*, No. 8:18-cv-1329-T-CPT, 2019 WL 2521843, *3 (M.D. Fla. June 19, 2019); *Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991) (citations omitted). The ALJ also relied on the testimony of the vocational expert, who testified that a hypothetical

individual with Medwit's age, education, work experience, and RFC could perform the job of real estate agent. (Tr. 68-69, 114-116). Because substantial evidence supported the ALJ's finding that Medwit would still perform his past relevant work as a real estate agent, the Court need not address the Commissioner's second reason for showing harmless error at step four. (Doc. 22, pp. 43, 45).

## III.   Conclusion

Upon consideration of the submission of the parties and the administrative record, the decision of the Commissioner is supported by substantial evidence. Accordingly, it is **RESPECTFULLY RECOMMENDED**:

The decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the Clerk of Court be directed to enter judgment in Defendant's favor.

Reported in Fort Myers, Florida on February 22, 2021.

_Nicholas P. Mizell_
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**