UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL MEDWIT,

    Plaintiff,

v.                                          Case No:  2:20-cv-143-JLB-NPM

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____

## ORDER

Plaintiff Michael Medwit seeks review of the Commissioner of Social Security's ("Commissioner") final decision denying his application for supplemental security income.  (Doc. 1.)  The Magistrate Judge issued a Report and Recommendation ("R&R") recommending that the Commissioner's denial be affirmed.  (Doc. 24.)  After careful review of Mr. Medwit's timely objections (Doc. 25) and the record on appeal, the Commissioner's decision is affirmed.[1]

## STANDARD OF REVIEW

A district judge may accept, reject, or modify the magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1).  When a party makes a timely and specific objection to a magistrate judge's report and recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  Id.

---

[1] The Commissioner has not responded to Mr. Medwit's objections.  (Doc. 24.)

In a Social Security appeal, the Court must determine whether the ALJ's decision is "supported by substantial evidence in the record and is based on proper legal standards." Winschel v. Comm'r, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting Crawford v. Comm'r, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. The Court may not decide the facts anew, reweigh evidence, or substitute its judgment for the ALJ's. Id. (quoting Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). Even when the Court finds that the evidence more likely supports a different conclusion, the ALJ's decision must be affirmed if it is supported by substantial evidence. See Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).

## DISCUSSION

Mr. Medwit raises five objections to the R&R (Doc. 25), which largely mirror his arguments—including the same case citations—in the parties' joint memorandum (Doc. 22). The Court will address each argument in turn.

**Objection I**: **The ALJ improperly failed to include mental limitations in the residual functional capacity ("RFC") and in hypothetical questions to the vocational expert ("VE")**.

Mr. Medwit first argues that the ALJ erred by not including any limitations from his alleged mental impairments in either the RFC or in the ALJ's hypothetical questioning of the VE. (Doc. 25 at 1–5.) Relying on contradictory portions of the record, he argues that substantial evidence does not support the ALJ's conclusion that Mr. Medwit could perform any past relevant work. Although Mr. Medwit's RFC accounts for certain physical limitations, it expressly states that "[t]here are

no mental health limitations." (Tr. at 66.)[2] As the R&R correctly notes (Doc. 24 at 9–11), substantial evidence supported the ALJ's determination that Mr. Medwit, at most, had "minimal, if any, work-related psychological limitations." (Tr. at 68.)

To begin, the ALJ noted that Mr. Medwit's medically determinable mental impairments were nonsevere and that he had only mild limitations in the following four areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) ability to concentrate, persist, or maintain pace; and (4) adapting or managing oneself. (Tr. at 65–66.) Then, the ALJ performed a more detailed assessment in formulating Mr. Medwit's RFC, which otherwise reflects these mild limitations. (Id. at 66.) While Mr. Medwit testified that he could not focus or function given his depression, the ALJ found that the other evidence of record contradicted these statements. (Id. at 67–68.)

For example, the ALJ noted that Mr. Medwit did not take his psychotropic medication as prescribed, and despite his diagnoses of adjustment disorder with depressed mood, his treatment history did not show more than minimal psychologically based work-related limitations. (Id. at 65, 67.) The ALJ also considered Mr. Medwit's own testimony about his daily activities which also support a finding that his mental impairments cause, at most, mild limitations. (Id.) And the Magistrate Judge rightfully found that the above considerations—including

---

[2] The Commissioner filed the transcript of the administrative proceedings (Doc. 15), which is hereinafter referred to as "Tr." and is followed by the appropriate page number.

other portions of the record, like State Agency Psychologist reports (Tr. at 68)—constituted substantial evidence supporting the ALJ's findings.

That Mr. Medwit identifies other evidence in the record which may support a different finding (i.e., greater limitations arising from mental impairments) does not mean that the ALJ's decision is unsupported by substantial evidence. See Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) ("[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."). As an illustration, Mr. Medwit's objection points out that Ms. Reci of SalusCare "reported Plaintiff had problems with paranoia . . . trouble concentrating or focusing, insight was limited," poor judgment, poor long-term memory, poor sleep, and that he suffered from anxiety, racing thoughts, trouble maintaining hygiene, and self isolation. (Doc. 25 at 3.) Ms. Reci noted these issues during an intake screening on June 27, 2017. (Tr. at 398.) But only the day before, another provider at SalusCare completed a diagnostic review form, which concluded that Mr. Medwit is "goal directed and his thoughts followed logical sequence . . . [j]udgment and insight is good at this time . . . kept good eye contact and his mood was positive and his affect was appropriate." (Id. at 408.) The R&R cites other similar treatment notes that the ALJ considered which, taken together and notwithstanding the favorable evidence Mr. Medwit cites, constitute substantial evidence for the ALJ's RFC determination. (Doc. 24 at 9–10.)

For these reasons, the ALJ neither erred in formulating Mr. Medwit's RFC, nor by using that RFC in the hypotheticals posed to the VE. As the R&R aptly

notes, the ALJ was not required to include unsupported limitations in his hypotheticals.  (Doc 24 at 11); see Crawford, 363 F.3d at 1161 ("[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.").  Accordingly, Mr. Medwit's first objection does not constitute reversible error.

**Objection II: The ALJ erred in failing to obtain or provide a mental [RFC] assessment**.

Next, Mr. Medwit re-raises a confusing argument that the ALJ erred by not providing a mental RFC assessment despite finding that Mr. Medwit "exhibited fair insight and judgment."  (Doc. 25 at 5–7 (citing Tr. at 66).)  He contends that "fair" is equivalent to at least a "moderate" limitation and relies on several cases discussing this point.  (Id.)  As the Magistrate Judge noted, the "premise of this argument is incorrect."  (Doc. 24 at 11.)  In short, the cases Mr. Medwit cited deal with how the term "fair" is defined in certain social security forms not at issue here.  (Id. at 12.)  Additionally, Mr. Medwit conflates "insight and judgment" with the four areas of mental functioning (Tr. at 65) that may sustain a limitation, of which "insight and judgment" are not a criterion.  (Doc. 24 at 11.)  For the reasons stated in the R&R (id.), this argument also fails.

**Objection III: The ALJ's refusal to order a physical consultative examination to include bilateral shoulder x-ray constituted a failure to adequately develop the record**.

Third, Mr. Medwit argues that the ALJ violated his obligation to develop a full and fair record when the ALJ did not request a consultative examination despite Mr. Medwit's testimony of severe shoulder pain.  (Doc. 25 at 8–14.)  Mr.

Medwit notes that "[a]bout six weeks <u>after</u> the ALJ issues his decision," an x-ray revealed "severe loss and irregularity of [his shoulder's] joint surfaces." (Doc. 25 at 8 (emphasis added).) To find error on this point would require an exacting standard not supported by law. See <u>Ingram v. Comm'r</u>, 496 F.3d 1253, 1269 (11th Cir. 2007) (The ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision").

Mr. Medwit recognizes as much by arguing that "an ALJ reversibly errs by not ordering a consultative examination when <u>required for an informed decision</u>." (Doc. 25 at 14 (emphasis added).) But the record here—including the medical evidence and Mr. Medwit's own testimony—provided more than enough evidence for the ALJ to make an informed decision. The R&R summarizes the portions of the record that the ALJ considered in finding that Mr. Medwit can engage in light work notwithstanding his shoulder pain. (Doc. 24 at 14–17.) The ALJ determined that evidence contradicted Mr. Medwit's testimony about the severity of his shoulder pain. And Mr. Medwit does not identify sufficient evidence which may have given rise to the inference that the ALJ should have further explored this issue through a consultative exam.[3] Needless to say, an examination

---

[3] The objection only cites an excerpt of one treatment note summarizing Mr. Medwit's past medical history as "shoulder pain, neck pain." (Doc. 25 at 8 (citing Tr. at 412).) Otherwise, Mr. Medwit has not established the necessary prejudice justifying remand. <u>Salazar v. Comm'r</u>, 372 F. App'x 64, 67 (11th Cir. 2010) ("In determining whether it is necessary to remand a case for development of the record, this [c]ourt considers 'whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.'" (quoting <u>Brown v. Shalala</u>, 44 F.3d 931, 935 (11th Cir. 1995))).

that occurred <u>after</u> the ALJ's decision cannot constitute such record evidence.  And, in any event, the R&R interestingly notes that Mr. Medwit presented this examination to the Appeals Council, which found "it did not relate to the period at issue and denied Medwit's request for review"—a contention Mr. Medwit does not challenge.  (<u>Id.</u> at 16.)  At bottom, the ALJ did not fail to develop a full and fair record.  The record is clear that substantial evidence about Mr. Medwit's shoulder pain existed, thereby allowing the ALJ to make an informed decision.  There was simply no need for the ALJ to order a consultative examination.[4]

**Objection IV: The ALJ erred in failing to include limitations relevant to Plaintiff's shoulder impairment in the RFC and in hypothetical questions to the VE**.

Mr. Medwit's fourth objection is a continuation of his previous argument. Specifically, he argues that the ALJ committed error by not including any limitations accounting for his shoulder pain in the RFC or the ALJ's hypothetical to the VE.  (Doc. 25 at 14–16.)  This argument fails principally for the same reasons as Mr. Medwit's third objection.  But, to reiterate, the ALJ relied on substantial evidence in the record which contradicted Mr. Medwit's testimony on the severity of

---

[4] Mr. Medwit's objection notes that the ALJ reserved ordering a consultative examination until after the hearing.  (Doc. 25 at 9.)  It also cites a portion of the hearing where the ALJ explained to Mr. Medwit's attorney the basis of his decision.  (<u>Id.</u>)  There, the ALJ explained that he reviewed the record and "didn't see anything about the bilateral shoulders before," to which the attorney pointed out Mr. Medwit's own written statements.  (<u>Id.</u> (citing Tr. at 80–81).)  The ALJ then cited specific exhibits within the record that the ALJ reviewed, noting that there "was no complaints of shoulder [pain]" and Mr. Medwit's attorney responded, "<u>I concur</u>."  (<u>Id.</u> (emphasis added).)  This exchange underscores why the ALJ did not need a consultative examination in reaching a fully informed decision about Mr. Medwit's shoulder pain with the record before him.

his shoulder pain and resulting impairment in formulating the RFC. (Doc. 24 at 17–19.) "The ALJ reviewed years of medical evidence with little or no treatment notes indicating any shoulder impairment" (id. at 16) supporting Mr. Medwit's conclusory assertion that he be "properly limited to sedentary work" (Doc. 25 at 15).[5] Finally, as with Mr. Medwit's first objection, the ALJ did not need to include findings that the record did not support in his hypothetical to the VE. Crawford, 363 F.3d at 1161.

**Objection V: The ALJ's finding that Plaintiff could perform past relevant work as a real estate agent was unsupported by substantial evidence**.

Lastly, Mr. Medwit argues that the ALJ erred in determining Mr. Medwit could perform the job of real estate agent for at least two reasons. First, Mr. Medwit argues that during the relevant period, he only made one sale as a real estate agent, and a "single real estate sale does not constitute substantial gainful activity and . . . does not constitute past relevant work." (Doc. 25 at 17.) Yet Mr. Medwit cites no case in support of that conclusion. Instead, the Court agrees with

---

[5] While not central to the Court's analysis on this point, it must be noted that the ALJ still limited Mr. Medwit to light work, and Mr. Medwit does not otherwise argue how his shoulder problems preclude this RFC finding. (Doc. 24 at 18); Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) ("[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."). Mr. Medwit's own allegations are not objective medical evidence which may have required either a consultative examination or more restrictive limitations in the RFC. See 20 C.F.R. § 416.929(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) . . . ."). Absent a showing of such evidence during the relevant period of inquiry (not after), Mr. Medwit's third and fourth objections are unpersuasive.

the R&R that under the relevant Social Security regulations and applicable caselaw, Mr. Medwit's commission of $12,230 in 2005 "averaged over the course of the year would equate to about $1,019 per month, which qualifies as substantial gainful activity." (Doc. 24 at 21–22.)

But even if Mr. Medwit were correct in that his real estate agent employment did not qualify as past relevant work, the R&R explains that the ALJ "noted that this job was performed long enough to learn and was performed within the relevant time frame." (Id. at 21 (citing Tr. at 68).) When the ALJ posed a hypothetical containing the limitations of Mr. Medwit's RFC, the VE testified that such an individual could perform the job of real estate agent. (Tr. at 116); Harris v. Astrue, No. 8:09-cv-670-T-TBM, 2010 WL 3463590, at *7 (M.D. Fla. Sep. 2, 2010) ("[E]ven if such work was not considered to be past relevant work, [p]laintiff was still capable of doing [this] type [of] job as []he performed them."). On that point, Mr. Medwit argues that he "would have also been unable to perform the job of real estate agent . . . both because of his mental limitations and because he should have been limited to at most sedentary work due to his shoulder impairment." (Doc. 25 at 17 (emphasis added).) The Court has already rejected Mr. Medwit's argument that his RFC should have included greater limitations accounting for mental health and shoulder impairments. Accordingly, his argument now, which necessarily flows from those already rejected premises, must also fail.[6]

---

[6] One final point is worth mentioning. At the hearing, Mr. Medwit's attorney posed a hypothetical to the VE containing a more restrictive RFC than what the ALJ ultimately determined: "light [work] hypothetical; simple, routine

## CONCLUSION

Based upon the foregoing, it **ORDERED** that:

1. Mr. Medwit's objections to the Magistrate Judge's R&R (Doc. 25) are **OVERRULED**.

2. The R&R (Doc. 24) is **ADOPTED** and made part of this Order.

3. The final decision of the Commissioner is **AFFIRMED**.

4. The Clerk is **DIRECTED** to terminate any pending deadlines and close the file.

**ORDERED** at Fort Myers, Florida, on March 25, 2021.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

---

work, if I add to that occasionally interaction [sic] with public, coworkers, and supervisor." (Tr. at 118–19 (emphasis added).) In response to this RFC which included certain limitations for mental impairments (e.g., occasional interaction), the VE testified that Mr. Medwit could perform the job of cleaner/housekeeper which is light-level work with an SVP of 2 and of which there are 700,000 jobs in the national economy. (Id. at 118.) While the ALJ did not identify the cleaner/housekeeper job as an alternative finding, given the VE's unchallenged testimony, any remand would be futile. See McLain v. Astrue, No. 8:06-cv-2156-T-TBM, 2008 WL 616094, at *7 (M.D. Fla. Mar. 3, 2008) ("The error, however, in and of itself, does not warrant a remand given that the VE identified three other jobs [p]laintiff ostensibly could perform in response to the [] hypothetical question."). Accordingly, any remand would be an exercise in futility as substantial evidence supports the ALJ's conclusion that Mr. Medwit is not disabled, as set forth in the applicable standard. See generally Wright v. Barnhart, 153 F. App'x 678, 684 (11th Cir. 2005) ("[W]hen an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand"); see also Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983).